UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ROBERTO DIAZ PEREZ,**

      **Plaintiff,**

v.                                                                     **Case No: 6:22-cv-821-CEM-EJK**

**TWISTER ROOFING &
CONSTRUCTION, LLC,**

      **Defendant.**

## ORDER

This cause comes before the Court on the parties' Joint Motion for Approval of Settlement and Fairness Determination (the "Motion") (Doc. 22), filed September 23, 2022. Upon consideration, the Motion is due to be denied without prejudice.

**I.     BACKGROUND**

On May 2, 2022, Plaintiff Roberto Diaz Perez initiated this action against Defendant Twister Roofing & Construction, LLC, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201–219. (Doc. 1.) Plaintiff alleges that he was employed by Defendant as a roof installer for seven weeks, from approximately January 21, 2022, to March 10, 2022. (Doc. 1 ¶ 8.) Plaintiff states that, during that time, Defendant paid him a daily rate of $250.00 for his work performed Monday through Friday, from 7:00 AM to 6:30 PM (11.5 hours), without a lunch break. (*Id.* ¶¶ 9, 10.) Defendant allegedly did not pay Plaintiff for hours he worked in excess of 40 hours per week. (*Id.* ¶ 11.) Plaintiff also alleges that Defendant did not receive wages

for his last two weeks of employment with Defendant. (*Id.* ¶ 16.) The parties have now negotiated a compromise and settlement of Plaintiff's claims and filed a motion for approval of their settlement agreement (the "Settlement Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 22-1.)

## II. STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was

designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, the "internal" factors, and whether the settlement frustrates the purpose of the FLSA, the "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

## III. DISCUSSION

### A. Settlement Sum

According to the Settlement Agreement (Doc. 22-1), Defendant has agreed to pay Plaintiff "the total amount of ONE THOUSAND DOLLARS AND ZERO CENTS ($1,000.00), made payable to Perez for alleged overtime and an equal amount for alleged liquidated damages." (*Id.* ¶ 2.a.) The parties settled this case prior to

---

[1] *See Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

Plaintiff answering the Court's interrogatories. However, in Plaintiff's Complaint, he alleged that he was owed $1,331.61 in unpaid overtime wages and $800.00 in unpaid wages. (Doc. 1 ¶¶ 34, 55.)

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wages or unpaid overtime compensation, *plus an additional, equal amount,* as liquidated damages. While the undersigned might assume from the "equal amount" language that Plaintiff is being paid $500 for his claims and $500 in liquidated damages, the parties should make the amounts for each explicit. Therefore, upon renewal of their Motion, the parties should clarify what portion of the $1,000 Plaintiff is receiving in unpaid wages and unpaid overtime compensation, and what amount is attributable to liquidated damages.

### B. Release

In the Settlement Agreement, Plaintiff agrees to release Joseph Gronigan[2] and Defendant,

> its parent corporations, affiliates, subsidiaries, divisions, predecessors, successors and assigns, subcontractors, joint employers, and the current and former employees, officers, directors, owners, and agents thereof, as well as the principals of [Defendant], and their heirs, executors, administrators, successors, and assigns . . . of and from any and all claims, known and unknown, asserted and unasserted, [Plaintiff] has or may have against the Released Parties . . . including, but not limited to, any alleged violation of

a whole host of claims unrelated to FLSA wage claims. (Doc. 22-1 ¶ 4) (the "Release").

---

[2] The Court is unaware of what role Mr. Gronigan has in relation to Plaintiff's case.

"A compromise of an FLSA claims that contains a pervasive release of unknown claims fails judicial scrutiny." *Moreno*, 729 F. Supp. 2d at 1352. In the Agreement, the Release is not limited to claims arising *solely* under the FLSA. The language encompasses claims unrelated to unpaid wage and hour claims under the FLSA or claims arising out of the same facts or circumstances as those in the instant action. This is the sort of pervasive, overly broad release that runs afoul of the FLSA because it attempts to release claims unrelated to the FLSA claims presented by Plaintiff's Complaint without justification or additional compensation.

Moreover, the Release is not limited to Defendant and its heirs and assigns. Rather, the Release extends to various unidentified non-parties, including Defendant's employees. The undersigned cannot approve a release to a "host of individuals and entities" including "unnamed past and present employees, agents, affiliated and subsidiary companies . . ." *Correa v. House of Glass, Inc.*, No. 6:17-cv-676-Orl-28TBS, 2017 WL 8794847, at *4 (M.D. Fla. Oct. 19, 2017) ("I wonder whether Plaintiff actually knows who he is releasing or why all of these individuals and entities should enjoy the benefit of his release."). The parties have not explained to the Court why so many unnamed parties are being released here, nor have they provided case law to support such a release. Thus, at this juncture, the Release runs afoul of the FLSA and will not be approved.

### C. Confidentiality

The Settlement Agreement contains a number of provisions under the headings of "Affirmations" and "Confidentiality" that serve to prohibit Plaintiff, with limited

exceptions, from disclosing the terms of the Settlement Agreement. (Doc. 22-1 ¶¶ 5.d., 5.e.; 8.) This District rejects confidential FLSA settlement agreements because they "thwart[] Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Dees*, 706 F. Supp. 2d at 1245. The parties have provided no authority for the proposition that the aforementioned provisions are acceptable under the FLSA, and therefore, the Motion is due to be denied on this basis.

### D. Non-Disparagement

The Agreement provides the following provision, in pertinent part, regarding Plaintiff's agreement not to disparage or discuss Defendant:

> PEREZ agrees that they will not in the future (a) talk about or otherwise communicate to any third party in a malicious, disparaging or defamatory manner regarding TWISTER ROOFING and/or Released Parties, or (b) make or authorize to be made any written or oral statement that may disparage the reputation of TWISTER ROOFING. This term is material to the Released Parties and if the Plaintiff violates this Provision, it is considered a material breach of this Agreement which extinguishes any duty on the part of the Released Parties set forth herein.

(Doc. 22-1 ¶ 7.)

Courts throughout this Circuit reject non-disparagement provisions in FLSA settlement agreements, finding them to thwart Congress's intent to ensure widespread compliance with the FLSA. *Bell v. James C. Hall, Inc.*, No. 616-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016). This provision contravenes this district's

prohibition on such provisions. *Dees*, 706 F. Supp. 2d at 1242–43 (M.D. Fla. 2010); *see also Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-CV-88(WLS), 2013 WL 5933991, at *4 (M.D. Ga. Nov. 1, 2013) (stating such provisions are "particularly problematic [when they do] not limit the restraints on Plaintiff's free speech to only those statements concerning his FLSA claim"); *Valdez v. T.A.S.O. Props., Inc.,* No. 8:09-cv-2250-T-23TGW, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010) (holding FLSA settlement agreements that include non-disparagement provisions "contemplate[] a judicially imposed 'prior restraint' in violation of the First Amendment"). Therefore, the Motion is also denied on this basis.

E.  **No Future Employment**

The Agreement contains a no-rehire provision. (Doc. 22-1 ¶ 6). This type of restrictive provision is generally disfavored by courts because it is viewed as punishing the plaintiff for exercising his rights under the FLSA. *See, e.g.*, *Rosado v. Melao Bakery LLC*, No. 616-cv-1060-Orl-41KRS, 2017 WL 2643982, at *4 (M.D. Fla. May 17, 2017), *report and recommendation adopted*, 2017 WL 2634795 (M.D. Fla. June 19, 2017) (discussing general disfavor of no rehire provisions and striking no-rehire provision as there was no indication plaintiff was receiving separate consideration); *Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-40PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017) (citing *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13–CV–88 (WLS), 2013 WL 5933991, at *6 (M.D. Ga. Nov. 1, 2013)), *report and recommendation adopted* 2017 WL 2172089 (M.D. Fla. May 17, 2017). The parties have not provided any explanation as

to why the no-rehire provision is fair and reasonable. Absent an explanation for the no-rehire provision, the Court cannot evaluate the fairness of this provision.

### F. Amendment Provision

The Agreement contains a provision that grants the parties leave to amend the Agreement. (Doc. 22-1 ¶ 13.) It provides that "[t]his Agreement may not be modified, altered, or changed except upon express written consent of both parties wherein specific reference is made to this Agreement." (*Id.*) Approval of a settlement agreement with such an amendment provision leaves "the parties free to circumvent *Lynn's Food* review through post hoc modifications of an already-approved agreement." *Dumas v. 1 ABLE REALTY, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018). As such, the Agreement is not in its "final form" and cannot be approved. *Id.*

## IV. CONCLUSION

Upon consideration of the foregoing, the parties' Joint Motion for Approval of Settlement and Fairness Determination (Doc. 22) is **DENIED WITHOUT PREJUDICE**. The parties may file a renewed motion that addresses the issues set forth in this Order and a revised settlement agreement, **on or before November 22, 2022**.

**DONE** and **ORDERED** in Orlando, Florida on November 8, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

- 10 -